**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | )   Case No. 17-1238-EGS |
| | ) |
| U.S. DEPARTMENT OF COMMERCE | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

**PLAINTIFF'S CONSOLIDATED BRIEF IN OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Chris Fedeli
DC Bar 472919
**JUDICIAL WATCH, INC.**
425 Third Street SW, Suite 800
Washington, DC 20024
cfedeli@judicialwatch.org
(202) 646-5172

Dated: June 20, 2018

*Counsel for Plaintiff*

## TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................... ii

Index of Exhibits ........................................................................................................v

Introduction and Summary ..........................................................................................1

Factual Background ....................................................................................................1

Standard of Review....................................................................................................3

Argument ...................................................................................................................4

1. Defendant Has Both Misapplied and Overstretched the Deliberative Process Privilege ..........4

   A. Release of These Records Will Not Cause a Chilling Effect, Therefore There is No Harm in Disclosure and the Records Must be Released ...........................................................5

   B.  Many of the Records are Not Deliberative, but Merely Discuss the Ordinary Conduct of Government Business ..................................................................................................7

   C. Many of the Records Only Deliberate About the Application of Previously-Decided Policy, and are Therefore Not Exempt .............................................................................9

2. *In Camera* Review of the Records for Further Releases is Warranted...................................11

   A. Errors in Page Numbers, Misidentified Challenges, and Inaccurately Identified Documents in Defendant's *Vaughn* Index and Productions Justify *In Camera* Review ...11

   B. *In Camera* Review is Needed Because the *Vaughn* Index is Cursory, Vague, and Does Not Sufficiently Justify the Deliberative Process Privilege Withholdings ......................14

Conclusion ...............................................................................................................16

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                    **Page**

*Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980) ...........................................................14

*Am. Immigration Council v. Dep't of Homeland Sec.,* 905 F. Supp. 2d 206 (D.D.C. 2012) ........13

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................3

*Bay Area Lawyers Alliance v. Dep't of State*, 818 F. Supp. 1291 (N.D. Cal. 1992) ....................15

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............5, 7, 8

*EPA v. Mink*, 410 U.S. 73 (1973) .........................................................................15

*Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118 (D.C. Cir. 1989) .........10

*Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3 (D.D.C. 1998) ........................................8

*Horowitz v. Peace Corps*, 428 F.3d 271 (D.C. Cir. 2005) ...........................................................15

*Isley v. EOUSA*, 1999 U.S. App. Lexis 29721 (D.C. Cir. 1999) ...................................................16

*James Madison Project v. NARA*, 2002 U.S. App. Lexis 21427 (D.C. Cir. 2002) .....................16

*Juarez v. DOJ*, 518 F.3d 54 (D.C. Cir. 2008) ..............................................................14

*Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1 (D.D.C. 2014) ..............10

*Judicial Watch, Inc. v. Dep't of the Army*, 402 F. Supp. 2d 241 (D.D.C. 2005) .........................13

*Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252 (D.D.C. 2004) ........................4

*Kimberlin v. DOJ*, 139 F.3d 944 (D.C. Cir. 1998) .......................................................16

*Lasko v. Dept. of Justice*, 2010 U.S. App. Lexis 18724 (D.C. Cir. 2010) ....................................6

*Marks v. United States*, 578 F.2d 261 (9th Cir. 1978) ...................................................6

*McClain v. DOJ*, 17 F. App'x 471 (7th Cir. 2001) ........................................................6

*McSheffrey v. Exec. Office for United States Attys.*, 13 Fed. Appx. 3 (D.C. Cir. 2001) ..............16

*Milner v. Dep't of Navy*, 131 S. Ct. 1259 (2011) .......................................................13

*Montrose Chemical Corp. v. Train*, 491 F.2d 63 (D.C. Cir. 1974) ..............................................15

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975) .......................................................8

*Patterson v. IRS*, 56 F.3d 832 (7th Cir. 1995) .............................................................15

*Quinon & Strafer v. Federal Bureau of Investigation*, 86 F.3d 1222 (D.C. Cir. 1996) ...............14

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992) .......................................................13

*Soucie v. David*, 448 F.2d 1067 (D.C. Cir. 1971) ........................................................14

*Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106 (D.C. Cir. 2007) ................................14

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997) .....................................................9

*Texas v. ICC*, 889 F.2d 59 (5th Cir. 1989) ...............................................................8

*Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476 (D.C. Cir. 1984) .............................4

## **Statutes, Rules, and Legislative History**

5 U.S.C. § 552(a)(4)(B) ...............................................................................4

5 U.S.C. § 552(a)(8)(A)(i) ...........................................................................5

Fed.R.Civ.P. 56(c) ...................................................................................4

S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965) ..................................................7

## **Other Authorities**

*Climate Change 2013: The Physical Science Basis. Contribution of Working Group I to the Fifth Assessment Report of the Intergovernmental Panel on Climate Change*, T. F. Stocker, D. Qin, G.-K. Plattner, M. Tignor, S.K. Allen, J. Boschung, A. Nauels, Y. Xia, V. Bex, P.M. Midgley, Eds. (Cambridge Univ. Press, Cambridge, 2013), available at http://www.ipcc.ch/report/ar5/wg1/ .................................................................1

NATIONAL REVIEW, *Did the Obama White House Collude with a Politically Motivated Scientist?*, Julie Kelly, April 6, 2017 available at https://www.nationalreview.com/2017/04/judicial-watch-lawsuit-seeks-obama-white-house-records-controversial-global-warming/, attached as Exhibit D to Plaintiff's Statement of Material Facts.................................................................2

PEW RESEARCH CENTER, U.S. Politics & Policy, *Beyond Distrust: How Americans View Their Government*, Nov. 23, 2015, *available at* http://www.people-press.org/2015/11/23/1-trust-in-government-1958-2015/ ................................................................................................................7

SCIENCE, *Possible Artifacts of Data Biases in the Recent Global Surface Warming Hiatus*, 348 Sci. 1469, June 26, 2015, available at http://science.sciencemag.org/content/348/6242/1469.full ..........................................1

SCIENCE MAGAZINE, *How a culture clash at NOAA led to a flap over a high-profile warming pause study*, Warren Cornwall and Paul Voosen, Feb. 8, 2017, available at http://www.sciencemag.org/news/2017/02/how-culture-clash-noaa-led-flap-over-high-profile-warming-pause-study, attached as Exhibit C to Plaintiff's Statement of Material Facts ...............2

THE ATLANTIC, *The "Insights" of Paul Ehrlich*, Ross Douthat, Dec. 19, 2008, available at https://www.theatlantic.com/personal/archive/2008/12/the-insights-of-paul-ehrlich/55882/, attached as Exhibit E to Plaintiff's Statement of Material Facts ....................................................3

U.S. House of Representatives, Committee on Oversight and Government Reform, "FOIA is Broken: A Report," January 2016, available at https://oversight.house.gov/wp-content/uploads/2016/01/FINAL-FOIA-Report-January-2016.pdf ........................................................................9

# INDEX OF EXHIBITS

*All Exhibits Attached to Plaintiff's Statement of Material Facts*

Exhibit A        Judicial Watch's Submitted List of Challenges to 53 Partial Withholdings, Jan. 10, 2018

Exhibit B        53 Pages of Records with Partial Withholdings Challenged by Plaintiff

Exhibit C        SCIENCE MAGAZINE, *How a culture clash at NOAA led to a flap over a high-profile warming pause study*, Warren Cornwall and Paul Voosen, Feb. 8, 2017

Exhibit D        NATIONAL REVIEW, *Did the Obama White House Collude with a Politically Motivated Scientist?*, Julie Kelly, April 6, 2017

Exhibit E        THE ATLANTIC, *The "Insights" of Paul Ehrlich*, Ross Douthat, Dec. 19, 2008

**Introduction and Summary**

This Court should order the release of all redacted FOIA exemption b5 withholdings at issue in this lawsuit.  Defendant U.S. Department of Commerce's invocation of the deliberative process privilege is either misapplied or overly broad and not in accordance with the narrowly prescribed grounds for avoiding transparency, as explained multiple times in this Circuit.  At a minimum – and especially due to errors and inconsistencies in Defendant's *Vaughn* index and withholdings – the Court should order Defendant to submit unredacted versions of the 53 challenged pages to chambers for *in camera* review followed by an order for additional releases as the Court sees fit.

**Factual Background**

In June 2015, the peer-reviewed journal *Science* published a report by the Department of Commerce's National Oceanic & Atmospheric Administration ("NOAA") Director Thomas Karl and eight other scientists entitled *Possible Artifacts of Data Biases in the Recent Global Surface Warming Hiatus* ("Karl Report").[1]  The Karl Report specifically set out to cast doubt on the recent scientific finding of a "pause" or "slowdown" in global warming reported by the Intergovernmental Panel on Climate Change ("IPCC Report").[2]  The IPCC report had concluded that the upward global surface temperature trend from 1998-2012 was lower than it had been from 1951-2012.  In response, the Karl Report suggested that the "pause" or "slowdown" in global warming found by the IPCC never existed based on its own review of a certain data set.

---

[1]  SCIENCE, 348 Sci. 1469, June 26, 2015, available at http://science.sciencemag.org/content/348/6242/1469.full.

[2]  *Climate Change 2013: The Physical Science Basis. Contribution of Working Group I to the Fifth Assessment Report of the Intergovernmental Panel on Climate Change*, T. F. Stocker, D. Qin, G.-K. Plattner, M. Tignor, S.K. Allen, J. Boschung, A. Nauels, Y. Xia, V. Bex, P.M. Midgley, Eds. (Cambridge Univ. Press, Cambridge, 2013), available at http://www.ipcc.ch/report/ar5/wg1/.

In February 2017, a high-level whistleblower from NOAA, Dr. John J. Bates, went public with evidence that the Karl Report "failed to disclose critical information."[3]  Dr. Bates alleged the Karl Report was "an effort to discredit claims of a warming pause, and [Karl's] team rushed to publish the paper so it could influence national and international climate talks."  *Id*.  Dr. Bates further explained that the timing of the release of the Karl Report and the misleading characterization of the report created the appearance (true or not) of non-objective and politically-motivated science to advance a preselected policy goal.[4]  The Karl Report was presented as a new study debunking the IPCC Report finding of a global warming pause. According to Dr. Bates, the Karl Report was instead merely a selection of data which, presented with insufficient context, created the impression that it was debunking the IPCC Report without actually doing so.[5]

The revelation of Dr. Bates' assessment changed the perception of the Karl Report from that of a merely debatable choice of data characterization to a potentially politically-motivated attempt to mislead through government scientific publication.  The presence of Thomas Karl's superior and close associate in the White House, John Holdren, aided in this perception.[6] Holdren is a politically polarizing figure who has been closely associated as a writing

---

[3] SCIENCE MAGAZINE, *How a culture clash at NOAA led to a flap over a high-profile warming pause study*, Warren Cornwall and Paul Voosen, Feb. 8, 2017, available at http://www.sciencemag.org/news/2017/02/how-culture-clash-noaa-led-flap-over-high-profile-warming-pause-study and attached hereto as Exhibit C to Plaintiff's Statement of Material Facts.

[4] *Id*. ("The issue here is not an issue of tampering with data, but rather really of timing of a release of a paper that had not properly disclosed everything it was, [said Dr. Bates]…").

[5] *Id*. ("The *Science* paper would have been fine had it simply had a disclaimer at the bottom saying that it was citing research, not operational, data for its land-surface temperatures, Bates says.").

[6] NATIONAL REVIEW, *Did the Obama White House Collude with a Politically Motivated Scientist?*, Julie Kelly, April 6, 2017 ("There's plenty of reason to suspect collaboration between Karl and Holdren. Both are professionally invested in anthropogenic global warming and have advanced their careers promoting a catastrophic view of humanity's fate..."), available at https://www.nationalreview.com/2017/04/judicial-watch-lawsuit-seeks-obama-white-house-records-controversial-global-warming/ and attached hereto as Exhibit D to Plaintiff's Statement of Material Facts.

collaborator and protégé of Paul Ehrlich, author of the discredited *Population Bomb* book and theory.[7]

In February of 2017, Judicial Watch filed this FOIA request with Defendant.  The request asked for "[a]ny and all records of communications between NOAA scientist Thomas Karl and Director of the Office of Science and Technology Policy John Holdren."  ECF 1 at ¶ 5.  Plaintiff filed this lawsuit to enforce its FOIA claims in June of 2017.  Defendant Commerce Department eventually produced over 900 pages of records consisting of email communications between Thomas Karl and John Holdren, a large portion of which were partially redacted.

Plaintiff Judicial Watch now challenges redacted b5 deliberative process privilege withholdings on only 53 pages out of the hundreds of redacted pages released in this lawsuit. Considering the potential appearance of political motivation to exaggerate climate science, Plaintiff believes that full transparency and release of these withholdings is in the best interest of both the government and the public.  Increased transparency in this case will help foster greater future trust and accountability in government science.  Increased secrecy will tend to do the opposite.

### Standard of Review

In FOIA litigation, as in all litigation, summary judgment is appropriate only when the pleadings and declarations demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477

---

[7] THE ATLANTIC, *The "Insights" of Paul Ehrlich*, Ross Douthat, Dec. 19, 2008 (criticizing John Holdren's praising Ehrlich's *Population Bomb* as "prescient" in 2006, explaining "there's a pretty good reason that the book is remembered primarily for its mix of hysteria and moral idiocy: When you kick off your argument by predicting that … in the 1970s and 1980s hundreds of millions of people will starve to death … and then proceed to argue for mass sterilization programs, [and] the quarantine and abandonment of countries too overpopulated to save from total collapse … you pretty much forfeit the right to be praised for your prescience"), available at https://www.theatlantic.com/personal/archive/2008/12/the-insights-of-paul-ehrlich/55882/ and attached hereto as Exhibit E to Plaintiff's Statement of Material Facts.

U.S. 242, 248 (1986); Fed.R.Civ.P. 56(c).  In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester.  *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).  Also in FOIA litigation, but unlike most other litigation, a defendant agency moving for judgment bears the burden of proof – *not* the plaintiff challenging defendant's compliance with FOIA.  5 U.S.C. § 552(a)(4)(B) ("the burden is on the agency to sustain its action"); *Military Audit Project v. Casey*, 656 F.2d 724, 739 (D.C. Cir. 1981).  Finally, agency decisions to "withhold or disclose information under FOIA are reviewed *de novo*" by the district court and are not subject to *Chevron* deference.  *Judicial Watch, Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004).

**Argument**

**1.  Defendant Has Both Misapplied and Overstretched the Deliberative Process Privilege**

Defendant's declaration and *Vaughn* index do not adequately support its claims of deliberative process privilege and exemption for the 53 challenged withheld-in-part pages.  In many cases Defendant's brief has adequately summarized existing law, but the facts Defendant has offered into evidence undercut its arguments and demonstrate that the records in question are non-privileged and therefore must be released.  Specifically, each of the withheld emails in question appears either: 1) deliberative but not likely to chill future government decision-making if released; 2) not genuinely deliberative, but just conducting government business; or 3) not deliberative of a government policy decision, but only about application of existing policy.  If any one of those three conditions is present, the redaction is not exempt under FOIA and must be released.  Plaintiff argues that all of Defendant's b5 withholdings falls into one of these three categories, although Defendant's vague and cursory *Vaughn* index makes it difficult or impossible to know which argument applies without *in camera* review.

A. Release of These Records Will Not Cause a Chilling Effect, Therefore There is No Harm in Disclosure and the Records Must be Released

Release of the records at issue will not harm future Commerce Department decision-making, and even if they would, the government has not come close to making its case that this is true.  The primary purpose of the deliberative process privilege is to protect information which, if released, would chill future agency deliberations.  *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (the privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism...").  Defendant's summary judgment brief has not made this case under any standard.

Equally importantly, the limited effort Defendant's brief makes to prove a chilling effect betrays a pre-2016 understanding of the deliberative process privilege.  Under the FOIA Improvement Act of 2016 ("FIA"), agencies "shall withhold information" under FOIA "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or "disclosure is prohibited by law."  5 U.S.C. § 552(a)(8)(A)(i).  Congress wrote this law to elevate the "harm" standard of all discretionary exemptions.  Recognizing that government officials' *mere* dislike of criticism for deliberative thought was not a sufficient interest to deny transparency, Congress' elevated the "harm" standard to ensure that only a genuine threat to future agency deliberations would be sufficient to avoid transparency.  Government officials who merely prefer to be insulated from any criticism for engaging in the deliberative exchange their job requires are no longer shielded by the exemption.  In other words: after FIA, the risk of public criticism of government is not a harm unto itself – to the contrary, it

is often a great public good – but only the prevention of honest agency deliberation is a genuine harm.

FIA therefore increases the scrutiny of deliberative process withholdings that defendant has asserted here.  The deliberative process privilege is discretionary, and therefore disclosure of deliberative records is not "prohibited by law" under the second prong of FIA.  The new standard under FIA puts the burden of proof on the agency to show actual harm from disclosure of these b5 withholdings.  In this case, Defendant's declaration from a FOIA officer about a chilling-effect only known to him second-hand likely does not satisfy this burden.  ECF 14-2 at 4, ¶ 15.

Release of these discussions between government scientists about climate change should not chill government speech.  ECF 14 at pp. 3-4.  If the public learns more about the White House and Department of Commerce communicating about performing sound scientific work around climate change, the government's interest in protecting its employees' freedom of thought will not be harmed.  In his declaration, Defendant's witness Mark Graff only provides a single generalized sentence referring to the potential for chilled government employee decision-making.  ECF 14-2 at 4, ¶ 15.  Accordingly, Commerce's claims of exemption from FOIA are not sufficiently supported by a factually-detailed declaration and may be ignored.  *McClain v. DOJ*, 17 F. App'x 471, 474 (7th Cir. 2001) ("the purpose of summary judgment is to isolate and dispose of factually unsupported claims"); *see also Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) ("Conclusory allegations unsupported by factual data will not create a triable issue of fact.").  It follows that Defendant has therefore failed to carry its burden of proof with respect to these withholdings.  *Lasko v. Dept. of Justice*, 2010 U.S. App. Lexis 18724, at *2 (D.C. Cir. 2010).

Plaintiff respectfully submits that Defendant's bare speculation about what might chill its employees' speech is not only wrong, but misplaced.   ECF 14 at p. 4.   If Defendant is worried that negative public opinion might deter its scientists from discussing data honestly, increased transparency instead of increased secrecy will be more likely to lessen this threat over the long term.   In an era of distrust between the American public and its government,[8] Defendant's tenuous invocation of the deliberative process privilege only serves to increase this distrust.   It creates the (usually false) impression that government scientists are routinely discussing topics that would shock the conscience of the average citizen.   In short, Plaintiff believes there is no sound basis in law or policy for Defendant's claimed withholding.   *See Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("We reemphasize the narrow scope of Exemption 5 and the strong policy of the FOIA that the public is entitled to know what its government is doing and why. The exemption is to be applied 'as narrowly as consistent with efficient Government operation.'"), *quoting* S. Rep. No. 813, 89th Cong., 1st Sess. 9 (1965).

Defendant's brief and declaration do not show actual harm.   The declarant offers a bare assertion that disclosure in his opinion will cause harm, but that opinion is not supported by sufficient facts.

B.  **Many of the Records are Not Deliberative, but Merely Discuss the Ordinary Conduct of Government Business**

Defendant has gone too far in characterizing the withholdings as exempt from disclosure because the nature of these discussions is not clearly deliberative.   *See Vaughn* Index, ECF 14-2 at 12-15.   First, as multiple courts have held, the deliberative process privilege is a narrowly

---

[8]  PEW RESEARCH CENTER, U.S. Politics & Policy, *Beyond Distrust: How Americans View Their Government*, Nov. 23, 2015 ("The public's trust in the federal government continues to be at historically low levels. Only 19% of Americans today say they can trust the government in Washington to do what is right..."), *available at* http://www.people-press.org/2015/11/23/1-trust-in-government-1958-2015/.

limited exemption to FOIA.  Agency officials merely requesting information, issuing instructions

to subordinates, providing information to colleagues, or administering and managing government

business are not "deliberating," and such records are not subject to the deliberative process

privilege of exemption b5.  *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 869 (D.C. Cir.

1980) (documents are not deliberative unless they "contain subjective, personal thoughts");

*Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 17 (D.D.C. 1998) ("instruction from a

senior to a junior official" is not deliberative); *Texas v. ICC*, 889 F.2d 59, 61 (5th Cir. 1989) ("a

mere request for information" is not deliberative).  In addition, any deliberative give-and-take

suggestion that is ultimately adopted and becomes the agency's decision is not itself exempt

under the deliberative privilege; only the rejected suggestions are protected.  *NLRB v. Sears,*

*Roebuck & Co*., 421 U.S. 132, 153 n.19 (1975) ("The probability that an agency employee will

be inhibited from freely advising a decisionmaker for fear that his advice, if adopted, will

become public is slight.").

Defendant Commerce Department's brief and declaration, on the other hand, ask the

Court to believe by bare assertion that the deliberative process withholdings at issue are not

instructions or directions about executing tasks, nor exchanges of information about scientific

work, nor discussions about getting agency business accomplished.  Defendant's *Vaughn* index

barely describes what the withheld records consist of.  ECF 14-2 at 12-15.  Rather, Defendant

simply claims that all the withholdings are give-and-take deliberations about future decisions of

Commerce Department policy concerning various scientific work on climate change.  ECF 14-2

at 3-4, ¶¶ 12-13.  Specifically, Defendant claims these withholdings are deliberations because

they "reflect internal comments… regarding the interpretation of scientific data."  ECF 14-2 at 4,

¶ 14.  This falls far short of the standard for the deliberative process privilege.  "Comments about

8

the interpretation of scientific data" could include a variety of non-deliberative discussions, including instructing colleagues on interpretation of data, asking colleagues to assist with interpretation of data, or managing the project of interpreting a large amount of data.  Since many of the redactions are emails from John Holdren at the White House to Thomas Karl at the Department of Commerce, it is likely at least some of these constitute instructions from a senior to a junior official and therefore are not deliberative.  These records should be released.

C.   Many of the Records Only Deliberate About the Application of Previously-Decided Policy, and are Therefore Not Exempt

The evidence Defendant submitted suggests that at least portions of the redactions merely discuss the application already-decided White House or Commerce Department decisions regarding how scientists are to interpret data, and are therefore not exempt.  FOIA makes a distinction between deliberations about establishing policy and discussions about the application of existing policy, and the Court should enforce this distinction in this case.  *Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (in-depth discussions of existing agency policy and its application to new cases are not deliberative).  Commerce seems to be suggesting that any discussion about data analysis for a report or talking points is a policy deliberation.  ECF 14 at p. 4.  Defendant's position, if accepted by this Court, would expand the deliberative process exemption too broadly.  Indeed, if applied in this case as Defendant suggests, the deliberative process privilege would swallow FOIA entirely and become the "withhold it because you want to" exception, eviscerating the statute.[9]

_____

[9]  U.S. House of Representatives, Committee on Oversight and Government Reform, "FOIA is Broken: A Report," January 2016, at p. 10, available at https://oversight.house.gov/wp-content/uploads/2016/01/FINAL-FOIA-Report-January-2016.pdf ("The (b)(5) [deliberative process] exemption, which has come to be known as the 'withhold it because you want to' exemption, is frequently misapplied.").

There is a substantial difference between the creation of Commerce Department policy for scientific methodology and practice generally and discussions about how to apply those policies to specific data sets or analyses.  If there were not such a distinction, virtually any government agency discussion about any possible activity could be withheld as exempt from disclosure under FOIA.  While courts have held that discussions about an agency's "*ultimate public statement or position*" are deliberative, it cannot be the case that every withheld conversation about a report or how to analyze new data is a deliberation of new policy rather than a mere implementation of a previously-made decision.  *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 60 F. Supp. 3d 1, 9 (D.D.C. 2014) (italics added).

The *Vaughn* index demonstrates that the bulk of the withheld records do not consist of policy deliberations.  Rather, the withheld records appear to be run-of-the-mill discussions about the application of existing government policy and therefore not exempt from release.  ECF 14-2 at 12-15.  Government scientists are either formulating a new policy position or they are not, but the work of accurate discovery of knowledge about the outside world does not specifically require the creation of new agency policy positions.[10]  Even internal scientific discussions can debate methodology and theory and still not be exempt under the deliberative process privilege if they are merely analyzing or explaining the application of an *existing* policy – which means a previously-made decision.

---

[10]  Plaintiff does not argue that scientific deliberations cannot be government policy deliberations.  In any scientific field there are debates and disagreements about the proper methodology for gathering data or which theories fit the data best.  When a government official formally decides that one methodology or theory must be used in place of another for organizing and presenting data in a government scientific report, that official has made policy.  Allowing debates about methodology and theory to occur enables scientific discovery and advancement to flourish, and such scientific policy deliberations are protected the same as any other government policy deliberation.  *Formaldehyde Inst. v. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1124-25 (D.C. Cir. 1989) (release of science policy deliberations would have a chilling effect on government scientific practice and therefore hamper agency goals).

Defendants' *Vaughn* index fails to show that all the withheld discussions were deliberating *new* policy or agency decisions, but only that they all *concerned* agency scientific policy.  ECF 14-2 at 12-15.  Each of the withholdings in the *Vaughn* index describes Commerce Department discussions with the White House about temperature and climate data, not about the formulation of agency scientific policy to form a framework or theory to interpret such data.  *See* ECF 14-2 at 12-15 (virtually all b5 withholdings describe discussions of temperature or weather event data).  None of these descriptions show deliberation about the creation of government policy for assessing climate data; rather, these descriptions could just as easily refer to mere discussions about how to execute existing White House climate science policy.  Because Defendant has failed to satisfy its burden of proof that these withholdings are subject to the deliberative process exemption, judgment for Plaintiff is appropriate.

**2.  *In Camera* Review of the Records for Further Releases is Warranted**

A.  Errors in Page Numbers, Misidentified Challenges, and Inaccurately Identified Documents in Defendant's *Vaughn* Index and Productions Justify *In Camera* Review

Defendant's *Vaugh* index and productions in this case have been riddled with technical inaccuracies large and small.  *In camera* review is warranted for this reason alone.  Because of these inaccuracies, Judicial Watch is taking the unusual step of attaching both the original set of redacted pages it is challenging and its original challenge list.  *See* Exhibits A and B to Plaintiff's Statement of Material Facts.  As these records show, Commerce's production in this case was inconsistently numbered.  Plf. SOF at Exh. A, p. 2.  Commerce redacted some portions of records without identifying why it was redacting them.  Plaintiff did its best to pursue its rights to information despite Commerce's mistakes.

On May 21, 2018 and again on May 23, 2018, Commerce made two additional re-releases allegedly correcting the errors in its previous production.  These re-releases contained

even more errors and created more problems than they solved.  The numbering in the re-releases

was not harmonized to align with the previous releases and challenges, but rather imposed a new

numbering system.  All the previous bates numbers – which were inconsistent and only partially

applied to begin with – were stripped from the new production.  A new Clearwell ID numbering

system was added, but some of the documents were given inconsistent and different Clearwell

IDs in the May 21 and May 23 releases.

In addition, there are several errors in Defendant's *Vaughn* index.  Certain pages Judicial

Watch challenged were left out of the revised production, creating errors in Commerce's *Vaughn*

index.  For instance, document number 807 describes only a b6 withholding in Defendant's

*Vaughn* index, but Judicial Watch's is challenging the b5 withholding from this page of the

production.  ECF 14-2 at 12; Plf. SOF, Exh. A, p. 2.  Furthermore, document number 1259

appears on Defendant's *Vaughn* index, but Judicial Watch is also challenging documents number

1260 and 1261 which were omitted from the *Vaughn*.  ECF 14-2 at 13; Plf. SOF, Exh A, p. 3.  In

the case of documents 729 and 939, the re-released pages do not match the pages Judicial Watch

challenged, raising questions about whether the *Vaughn* index is describing the correct

withholdings.  Defendant's *Vaughn* index also asserts dozens of justifications for b6

withholdings, however Judicial Watch only ever challenged two pages with b6 withholdings in

this litigation.  Plf. SOF at Exh. A, p. 3.  The two b6 withholdings Judicial Watch did challenge

have since been reclassified as b5 withholdings.  In still other cases, Commerce's May 2018 re-

releases make new redactions which were previously released to Plaintiff unredacted, so now

Commerce's *Vaughn* index is justifying multiple withholdings to the Court for seemingly no

reason.  For all these reasons, Plaintiff is attaching the original 53 redacted pages it challenged in

the hopes that Defendant's *Vaughn* errors and reformatting in subsequent re-releases will not

continue to cause problems for the Court's review of the merits of Plaintiff's claims in this

litigation.[11]  Plf. SOF at Exh. B.

The D.C. Circuit has held that such errors are unacceptable:

The purpose of the *Vaughn* index is to permit adequate adversary testing of the agency's claimed right to an exemption, and those who contest denials of FOIA requests – who are, necessarily, at a disadvantage because they have not seen the withheld documents – can generally prevail only by showing that the agency's *Vaughn* index does not justify withholding information under the exemptions invoked. FOIA litigants are entitled to assume that the agency's *Vaughn* index is accurate in every detail. And so is the court. There is no excuse for submitting a *Vaughn* index that contains errors, even minor ones. We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate.

*Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) (citation and internal quotation marks

omitted), abrogated on other grounds, *Milner v. Dep't of Navy*, 131 S. Ct. 1259 (2011).  *In*

*camera* review is now warranted, and the Court should require Commerce's *in camera*

submission to match Plaintiff's challenges as outlined in the attached files of Plaintiff's

challenged withholdings and Plaintiff's challenge list.  *Judicial Watch, Inc. v. Dep't of the Army*,

402 F. Supp. 2d 241, 249 & n.6 (D.D.C. 2005) (ordering in camera inspection to review accuracy

of agency's descriptions of withheld information after finding discrepancies and inaccuracies in

the *Vaughn* index), summary judgment granted in part, 435 F. Supp. 2d 81 (D.D.C. 2006); *Am.*

*Immigration Council v. U.S. Dep't of Homeland Sec.,* 905 F. Supp. 2d 206, 211 (D.D.C. 2012)

("The *Vaughn* index, moreover, which should justify all withholdings of documents, oscillates

between sloppy and misleading. After *in camera* review, the Court concludes that two-thirds of

the withheld records contested by the Council should have been largely or wholly released.

---

[11]  There are only two pages where Defendant's re-releases have removed all redactions Plaintiff was challenging – pages 70 and 75 from the Fourth Production.  Nevertheless, for the sake of clarity and to avoid future confusion considering Defendant's continued production errors, document format changes, and page renumbering and mis-numbering, Plaintiff is referring throughout this brief to the original 53 pages.

FOIA cases count on agencies to do their jobs with reasonable diligence. USCIS must do better.").

B.   *In Camera* Review is Needed Because the *Vaughn* Index is Cursory, Vague, and Does Not Sufficiently Justify the Deliberative Process Privilege Withholdings

Because the requested records are "few in number and of short length," the Court may reasonably review the responsive records *in camera*. *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980). Furthermore, *in camera* review is "particularly appropriate" in cases like this one, where the "agency affidavits are insufficiently detailed to permit meaningful review of exemption claims." *Quinon & Strafer v. Federal Bureau of Investigation*, 86 F.3d 1222, 1228 (D.C. Cir. 1996).

*In camera* review should be conducted here. Courts depart from routine reliance on agency affidavits where exemptions are not sufficiently proven, or where other good cause may exist to order release of information under FOIA. *Juarez v. DOJ*, 518 F.3d 54, 59-60 (D.C. Cir. 2008); *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980) ("Where the agency fails to meet that burden, a not uncommon event, the court may employ a host of procedures that will provide it with sufficient information to make its *de novo* determination, including *in camera* inspection."). Here, the court should undergo an *in camera* review to determine the appropriateness of Defendant's asserted claims of deliberative process privilege.

To the extent the Court finds partial merit to any of Defendant's claimed exemptions, further release of segregable information should be ordered. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld"); *Soucie v. David*, 448 F.2d 1067, 1077-78 (D.C. Cir. 1971) (non-exempt material may be protected only if it is "inextricably intertwined" with exempt information).

14

In this case, based on Defendant's non-descriptive *Vaughn* index, some of the withholdings may be partially deliberative but also contain other improper redactions of facts which are not integrated with those deliberations.  ECF 14-2 at 12-15.  The deliberative process privilege may not be used to withhold information ordinarily available in discovery merely because facts are contained within deliberative documents.  *EPA v. Mink*, 410 U.S. 73, 91 (1973).  Indeed, the facts in such records can only be withheld in certain specific situations which Defendant's *Vaughn* index and declaration make no effort to establish.  *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) (facts can be withheld if they were selected from a larger group of facts as a part of the deliberation); *Horowitz v. Peace Corps*, 428 F.3d 271, 277 (D.C. Cir. 2005) (facts may be withheld if they are so integrated into the deliberation that revealing the fact would reveal the substance of the deliberations themselves).  *In camera* review is therefore further warranted to account for Defendant's failure to satisfy its burden.

Defendant's declaration offers only boilerplate language about a segregability review.  ECF 14-2 at 12-15.  This does not meet the burden in FOIA litigation.  *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992) (finding that "boilerplate" statement that "no segregation of nonexempt, meaningful information can be made for disclosure" is "entirely insufficient"); *see also Patterson v. IRS*, 56 F.3d 832, 839 (7th Cir. 1995) ("[B]ecause the [agency declaration] lumps all of the withheld information together in justifying nondisclosure, the district court could not have independently evaluated whether exempt information alone was being withheld or deleted in each instance.").

Accordingly, to the extent the Court does not order the release in full of the Commerce Department withholdings, segregable portions should be released following *in camera* review.[12]

### Conclusion

Plaintiff's Motion for Summary Judgment should be granted, and Defendant's Motion for Summary Judgment should be denied.  The Court should order the full release of the b5 withheld records in question.

Dated: June 20, 2018                                          Respectfully submitted,

                                                             *s/ Chris Fedeli*

                                                             Chris Fedeli
                                                             JUDICIAL WATCH, INC.
                                                             425 Third St. SW, Ste. 800
                                                             Washington, DC 20024
                                                             cfedeli@judicialwatch.org
                                                             (202) 646-5185

                                                             *Attorney for Plaintiff*

---

[12]  A district court decision may be remanded entirely on procedural grounds – even if it correctly rules for the agency in all substantive exemption respects – if it fails to make segregability findings.  *See James Madison Project v. NARA*, 2002 U.S. App. Lexis 21427 at *1 (D.C. Cir. 2002) (*per curiam*) (remanding, despite ruling in favor of government on exemption claims, for a "more precise finding" on segregability); *McSheffrey v. Exec. Office for United States Attys.*, 13 Fed. Appx. 3, 4 (D.C. Cir. 2001) (remanding with explicit instructions that the district court "determine whether any portion of these documents can be segregated for release"); *Isley v. EOUSA*, 1999 U.S. App. Lexis 29721 at *7 (D.C. Cir. 1999) (remanding case for segregability finding); *Kimberlin v. DOJ*, 139 F.3d 944, 950 (D.C. Cir. 1998) ("[W]e must remand this case to the district court to determine whether any of the withheld documents contains material that can be segregated and disclosed ...").