# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| JUDICIAL WATCH, INC., |
|             *Plaintiff*, |
| *v.* |
| U.S. DEPARTMENT OF COMMERCE, |
|             *Defendant*. |

Case No. 17-cv-1283 (EGS)

**<u>MEMORANDUM OPINION</u>**

This case arises out of a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request that Plaintiff Judicial Watch, Inc. ("Judicial Watch") made to Defendant United States Department of Commerce's ("Commerce") National Oceanic and Atmospheric Administration ("NOAA"). Judicial Watch sought records of communications between Thomas Karl, NOAA scientist, and John Holdren, Director of the Office of Science and Technology Policy at NOAA, from January 20, 2009, through January 20, 2017. Judicial Watch's challenges are now limited to Commerce's redactions to specific pages in those records.

Pending before the Court are the parties' cross-motions for summary judgment. Upon consideration of the motions, the oppositions and the replies thereto, the applicable law, the entire record, and for the reasons stated below, Judicial Watch's motion for summary judgment is **GRANTED in PART, DENIED**

**in PART**, and **HELD IN ABEYANCE in PART** and Commerce's motion for summary judgment is **DENIED**.

**I. Background**

Unless otherwise noted, the following facts are taken from the Complaint, ECF No. 1, and from Commerce's Statement of Material Facts, Def.'s Mot., Statement of Material Facts ("SMF"), ECF No. 14-1.

This case involves a FOIA request by Judicial Watch directed to NOAA, in which Judicial Watch sought "[a]ny and all records of communications between NOAA scientist Thomas Karl and Director of the Office of Science and Technology Policy John Holdren" from "January 20, 2009, through January 20, 2017." Compl., ECF No. 1 ¶ 5. Commerce produced over 900 pages of records consisting of email communications between Thomas Karl and John Holdren, a large portion of which were partially redacted. Pl.'s Cross-Mot., ECF No. 15 at 9.[1]

After production, Commerce moved for summary judgment. *See* Def.'s Mot., ECF No. 14. Commerce's motion was supported by the declaration of Mark H. Graff, NOAA'S FOIA Officer, *see* Def.'s Mot., Decl. of Mark Graff, ECF No. 14-2 at 1-6, as well as a Vaughn index, *id.* at 12-15. Mr. Graff's declaration explained

---

[1] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

the scope of NOAA's use of a FOIA exemption to disclosure based on the deliberative process privilege, Exemption 5, and why the redacted material met that exemption. *Id.* at 1–6. In further support of its motion for summary judgment, Commerce later submitted another declaration of Mr. Graff. *See* Second Decl. of Mark Graff, ECF No. 17-2, and a Revised Vaughn Index, ECF No. 17-3, both of which elaborated on Commerce's redactions pursuant to Exemption 5.

Judicial Watch opposed Commerce's motion and filed a cross-motion for summary judgment challenging the redactions made by Commerce to certain pages of produced documents on the basis of Exemption 5. Pl.'s Cross-Mot., ECF No. 15 at 9.[2] The parties' motions are now ripe for disposition.

**II. Legal Standards**

   **A. Summary Judgment**

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C 2011)(citations omitted). Summary judgment is warranted "if the movant shows [by affidavit or other admissible evidence] that there is no genuine dispute as to any material

---

[2] Commerce also redacted personal information from the documents based on FOIA Exemption 6, but plaintiffs do not challenge Commerce's reliance on that exemption. Pl.'s Cross-Mot., ECF No. 15 at 9.

fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a). A party opposing a summary judgment
motion must show that a genuine factual issue exists by "(A)
citing to particular parts of materials in the record . . . or
(B) showing that the materials cited do not establish the
absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c).
Any factual assertions in the moving party's affidavits will be
accepted as true unless the opposing party submits his own
affidavits or other documentary evidence contradicting the
assertion. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir.
1992). However, "the inferences to be drawn from the underlying
facts . . . must be viewed in the light most favorable to the
party opposing the motion." *Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(internal quotation
marks omitted).

An agency has the burden of demonstrating that "each
document that falls within the class requested either has been
produced, is unidentifiable, or is wholly [or partially] exempt
from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d
339, 352 (D.C. Cir. 1978)(internal citation and quotation
omitted). In reviewing a summary judgment motion in the FOIA
context, the court must conduct a *de novo* review of the record,
*see* 5 U.S.C. § 552(a)(4)(B), but may rely on agency
declarations. *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200

(D.C. Cir. 1991). Agency affidavits or declarations that are "relatively detailed and non-conclusory" are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted).

**B. FOIA Exemptions**

Congress enacted FOIA to "open up the workings of government to public scrutiny through the disclosure of government records." *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984)(alterations and internal quotation marks omitted). Although the legislation is aimed toward "open[ness] . . . of government," *id.*, Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information," *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992)(citations and quotations omitted). As such, pursuant to FOIA's nine exemptions, an agency may withhold requested information. 5 U.S.C. § 552(b)(1)-(9). However, because FOIA established a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the exemptions. *See Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

In 2016, Congress passed the FOIA Improvement Act ("Act"), which amended FOIA. *See* Pub. L. No. 114-185, 130 Stat. 538.

Relevant to this case, the Act codified the "foreseeable harm" standard established by the Department of Justice in 2009 and used to defend an agency's decision to withhold information. *See* S. REP. NO. 114-4, at 3 & n.8 (2015)(citing Office of Att'y Gen., Memorandum for Heads of Executive Departments and Agencies, Subject: Freedom of Information Act (Mar. 19, 2009)); S. REP. NO. 114-4, at 7–8. Under the "foreseeable harm" standard, the Department of Justice would "defend an agency's denial of a FOIA request only if (1) the agency reasonably fores[aw] that disclosure would harm an interest protected by one of [FOIA's] statutory exemptions, or (2) disclosure was prohibited by law." U.S. Dep't of Justice, Guide to the Freedom of Information Act 25 (2009 ed.), https://www.justice.gov/archive/oip/foia_guide09/procedural-requirements.pdf (internal quotation marks omitted).

Accordingly, as amended by the FOIA Improvement Act, the statutory text now provides that: "An agency shall . . . withhold information under this section only if . . . (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A). Stated differently, "pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption—

6

protected interest" and if the law does not prohibit the disclosure. *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72 (D.D.C. 2018)(citation omitted).

The agency bears the burden of justifying any withholding. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007). "To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn index,' sufficiently detailed affidavits or declarations, or both." *Hussain v. U.S. Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009)(citations omitted). Although there is no set formula for a Vaughn index, the agency must "disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987).

**III. Analysis**

Judicial Watch's challenges are now limited to Commerce's redactions to a total of 48 pages.[3] Commerce relies on FOIA's Section 5 exemption to disclosure, specifically the exemption

---

[3] Judicial watch initially challenged 53 redacted pages. However, after Judicial Watch filed its motion for summary judgment, Commerce released three documents to Judicial Watch with the redactions removed, 827, 817, 722. Second Graff Decl., ECF No. 17-2 at 2. Commerce has also released documents 70 and 75 with the redactions removed. Pls's Cross-Mot. ECF No. 15 at 19, n.11. Plaintiffs have therefore withdrawn their objections to these documents. *See* Pl.'s Reply, ECF No. 19 at 7.

7

under the deliberative process privilege. *See* Def.'s Mot. ECF No. 14 at 6–7. In response, Judicial Watch argues that the redacted documents are either: (1) deliberative but not likely to chill future government decision-making if released; (2) not genuinely deliberative, but rather just conducting government business; or (3) not deliberative of a government policy decision, but only about application of existing policy. *See* Pl.'s Cross-Mot., ECF No. 15 at 10.

### A. Exemption 5

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Thus, "Exemption 5 permits an agency to withhold materials normally privileged from discovery in civil litigation against the agency." *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997). To qualify as exempt under Exemption 5, "a document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008)(internal quotation marks and citation omitted). One of the privileges against discovery that Exemption 5 encompasses is the deliberative process privilege, which

protects from disclosure documents that would reveal an agency's deliberations prior to arriving at a particular decision. *Dent v. Exec. Office for U.S. Attorneys*, 926 F. Supp. 2d 257, 267–68 (D.D.C. 2013).

To fall within the scope of the deliberative process privilege, withheld materials must be both "predecisional" and "deliberative." *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A communication is predecisional if "it was generated before the adoption of an agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). "Even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue[.]" *Id.* The deliberative process privilege is to be construed "as narrowly as consistent with efficient Government operation." *United States v. Phillip Morris*, 218 F.R.D. 312, 315 (D.D.C. 2003)(quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 667 (D.C. Cir. 1981)).

Judicial Watch argues that Commerce has failed to meet the foreseeable harm standard codified in the Act. Pl.'s Cross-Mot., ECF No. 15 at 11. In Commerce's motion for summary judgment it offered the following justification for claiming the

9

deliberative process privilege through the declaration of Mr. Graff:

> The release of such information could have a chilling effect on the discussions within the agency in the future, discouraging a frank and open dialogue among agency employees during the formulation of scientific papers NOAA creates, environmental reports, and inter-agency collaborations on responses to scientific data and memoranda.

Graff Decl., ECF No. 14-2 at 4. Perhaps realizing that its justification left much to be desired in light of the foreseeable harm standard, Commerce responded to Judicial Watch's cross-motion for summary judgment with another declaration elaborating on what foreseeable harm would occur if the withheld information was released:

> By way of further explanation regarding the foreseeable harm for releasing the material, the release of the withheld information could have a chilling effect on the discussions within the agency in the future, discouraging a frank and open dialogue among agency employees during the formulation of scientific papers NOAA creates, environmental reports, and inter-agency collaborations on responses to scientific data and memoranda. These deliberations are essential to ensuring that the right information is delivered to public in the form of reports, analyses, and other publications and announcements. In addition, these deliberations are important to determining whether—and what type of—official responses are needed to address interpretations of scientific information on climate matters by media and outside groups. Failure to have these frank deliberations could cause confusion if incorrect or

> misrepresented climate information remained in the public sphere.

Second Graff Decl., ECF No. 17-2 at 2-3.

Despite the fact that the Act was enacted several years ago, there are few cases which analyze what is required under the foreseeable harm standard. The most in-depth discussion occurred in *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62 (D.D.C. 2018). In *Rosenberg*, a reporter from the *Miami Herald* sought emails relating to a military task force in Guantanamo Bay, Cuba. *Id.* at 71. The agency released several redacted documents and argued the redactions were proper under FOIA Exemption 5. *Id.* at 77-80. Applying the "foreseeable harm" standard, the court found that the agency had failed to explain how the disclosures of information withheld under Exemption 5 would harm the agency's deliberative process. *Id.* at 79. The court noted that the foreseeable harm requirement does not go "so far as to require the government to identify harm likely to result from disclosure of *each* of its Exemption 5 withholdings" but the government at least needed to do more than "perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information." *Id.*(emphasis in original).

The Court finds the analysis in *Rosenberg* persuasive and agrees that the text and purpose of the Act both support a

heightened standard for an agency's withholdings under Exemption 5. The text of the Act states an agency may only withhold information if "the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption." 5 U.S.C. § 552(a)(8)(A). In other words, even if an exemption applies, an agency must release the document unless doing so would reasonably harm an exemption-protected interest. *See Rosenberg*, 342 F. Supp. 3d at 73. The purpose of the Act was to establish a "presumption of openness," and its passing was based on the recognition that "from the beginning, agencies have taken advantage of these exemptions to withhold any information that might technically fit." 162 Cong. Rec. H3714-01, H3717162 (2016)(noting that although some agencies "have made an effort to comply with the letter of the law, very few have complied with the spirit of the law"). To that end, Congress sought to require an agency to "first determine whether [it] could reasonably foresee an actual harm" before the agency claims an exemption. *Id.* Furthermore, an "inquiry into whether an agency has reasonably foreseen a specific, identifiable harm that would be caused by a disclosure would require the ability to articulate both the nature of the harm and the link between the specified harm and specific information contained in the material withheld." H.R. Rep. No. 114-391, at 9 (2016).

Applying the standard to this case, the Court finds that the declarations and supporting Vaughn indexes fall short of what is required under the Act.[4] In Mr. Graff's first declaration he explained that release of the withheld information "could have a chilling effect on the discussion within the agency in the future" and "discourage[] a frank and open dialogue among agency employees." *See* Graff Decl., ECF No. 14-2 at 4. He further explained in his second declaration that the "foreseeable harm" in releasing the withheld information was that it "could have a chilling effect on the discussions within the agency" and added that these "deliberations are essential to ensuring that the right information is delivered to [the] public" and that failure "to have these frank deliberations could cause confusion if incorrect or misrepresented climate information remained in the public sphere." Second Graff Decl., ECF No. 17-2 at 2–3. These general explanations of the possibility of a "chilling effect" fall short of articulating "a link between the specified harm and specific information

---

[4] In its cross-motion for summary judgment and opposition Commerce failed to engage with the reasonably foreseeable standard. Indeed, the only response that Commerce advanced was that no case law supported Judicial Watch's argument that a heightened standard exists. *See* Def.'s Reply, ECF No. 17 at 2. (noting Judicial Watch fails to cite any legal support for the standard).

13

contained in the material withheld." *See* H.R. REP. NO. 114-391, at 9 (2016).

The Revised Vaughn Index, although seemingly more specific, contains comparable boiler plate language to justify the redactions. For each withheld document Commerce simply states that "the redacted material is being withheld under exemption (b)(5)" and that the "release of the redacted material would have the foreseeable harm of discouraging a frank and open dialogue among interagency staff." *See, e.g.*, Revised Vaughn Index, ECF No. 17-3 at 1-6 (using identical language to explain claim of exemption for each page). If the mere possibility that disclosure discourages a frank and open dialogue was enough for the exemption to apply, then Exemption 5 would apply whenever the deliberative process privilege was invoked regardless of whether disclosure of the information would harm an interest protected by the exemption.

However, in enacting the legislation, Congress intended that the technical application of an exemption was not sufficient without a showing that disclosure also harmed an interest the exemption sought to protect in the first place. Commerce has provided no explanation as to why disclosure is likely to discourage frank and open dialogue as to the specific withholdings—or categories of withholdings—in this case. *See Rosenberg*, 342 F. Supp. 3d at 79 (noting that a categorical

14

approach in which an agency identifies the harm likely to result from each disclosure of certain categories of documents is sufficient). Commerce simply posits that such disclosures "*could* chill speech" and could have an effect on interagency discussion. *See* Second Graff Decl., ECF No. 17-2 at 2 (emphasis added). The question is not whether disclosure could chill speech, but rather if it is reasonably foreseeable that it will chill speech and, if so, what is the link between this harm and the specific information contained in the material withheld. In other words, the Act requires more than speculation, which is all that Commerce has provided through its declarations and Vaughn indexes.

Because Commerce has failed to satisfactorily show that the redactions under Exemption 5 would result in reasonably foreseeable harm to its deliberative process, the Court denies Commerce's motion. However, the Court will allow Commerce to supplement its declaration on remand to satisfy the "foreseeable harm" standard, rather than grant summary judgment in Judicial Watch's favor. As the agency will have another opportunity to supplement its declarations as to Exemption 5, the Court need not address the issue of whether further segregation of the redacted information from information that may be disclosed is possible. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007)(stating a district court must make

specific findings of segregability regarding the documents to be withheld, "before approving the application of a FOIA exemption").

**IV. Conclusion**

For the reasons stated above, Judicial Watch's motion for summary judgment is **GRANTED in PART, DENIED in PART**, and **HELD IN ABEYANCE in PART** and Commerce's motion for summary judgment is **DENIED**. An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan
             United States District Judge
             March 22, 2019**