**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JUDICIAL WATCH, INC.,

                    *Plaintiff*,

        *v.*                              Case No. 17-cv-1283 (EGS)

U.S. DEPARTMENT OF COMMERCE,

                    *Defendant*.

**MEMORANDUM OPINION**

This case arises out of a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request that Plaintiff Judicial Watch, Inc. ("Judicial Watch") made to Defendant United States Department of Commerce's ("Commerce") National Oceanic and Atmospheric Administration ("NOAA"). Judicial Watch seeks records of communications between Thomas Karl, a NOAA scientist, and John Holdren, Director of the White House Office of Science and Technology Policy, from January 20, 2009, through January 20, 2017. In March 2019, this Court, in response to the parties' initial cross motions, denied Commerce's Motion for Summary Judgment and held in abeyance Judicial Watch's Motion for Summary Judgment[1] in order to provide Commerce with the

---

[1] The Court granted Judicial Watch's motion to the extent it sought a ruling that Commerce must provide a more detailed Vaughn Index, and denied Judicial Watch's motion to the extent it sought a ruling that Commerce must provide the withheld information forthwith. *See* Order, ECF No. 20.

opportunity to supplement its declaration to satisfy the "foreseeable harm" standard set forth in the FOIA Improvement Act ("FIA"), Pub. L. No. 114-185, 130 Stat. 538. *See Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 101 (D.D.C. 2019).

Pending before the Court are the parties' second cross-motions for summary judgment. Upon consideration of the motions, the oppositions and the replies thereto, the applicable law, the entire record, and for the reasons stated below, Commerce's Renewed Motion for Summary Judgment is **GRANTED**, the portion of Judicial Watch's initial Motion for Summary Judgment that was held in abeyance is **DENIED**, and Judicial Watch's Second Motion for Summary Judgment is **DENIED**.

## I.   Background

### A. Factual Background

The following facts are not in dispute. Judicial Watch submitted a FOIA request to NOAA on February 6, 2017, requesting "[a]ny and all records of communications between NOAA scientist Thomas Karl and Director of the Office of Science and Technology Policy at the White House John Holdren" between "January 20, 2009 through January 20, 2017." Compl., ECF No. 1 at 2 ¶ 2.[2]

---

[2] When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

"NOAA confirmed that it received the request on February 8, 2017, assigning the request Tracking Number DOC-NOAA-2017-000580." *Id.* at ¶ 7. Since this action has been pending, Commerce has "produced over 900 pages of records consisting of email communications between Thomas Karl and John Holdren . . . ." Pl.'s Mot., ECF No. 16-1 at 9. What remains at issue are Commerce's redactions to a total of 48 pages. Def.'s Renewed Mot. for Summ. J., ECF No. 23 at 4.

### B. Procedural History

On May 15, 2019, Commerce filed a Renewed Motion for Summary Judgment. *See* Def.'s Mot., ECF No. 23. Commerce submitted a third declaration of Mark H. Graff, NOAA's FOIA Officer, to support its renewed motion for summary judgment, *see* Third Decl. of Mark H. Graff ("Third Graff Decl."), ECF No. 23-2; as well as an updated *Vaughn* index, Def.'s Renewed Mot. for Summary J. ("Def.'s Mot."), Ex. 2, ECF No. 23-2. On June 11, 2019, Judicial Watch filed a second Cross-Motion for Summary Judgment/Opposition challenging the redactions made by Commerce to certain pages of produced documents on the basis of Exemption 5. Pl.'s Cross-Mot., ECF No. 25 at 9.[3] Commerce filed its Reply/Opposition on July 15, 2019, *see* Def.'s Reply, ECF No. 26;

---

[3] Commerce also redacted personal information from the documents based on FOIA Exemption 6, but plaintiffs do not challenge Commerce's reliance on that exemption. Pl.'s Opp'n, ECF No. 15 at 9.

3

and on July 22, 2019, Judicial Watch filed its Rely, *see* Pl.'s Reply, ECF No, 28. The parties' motions are now ripe for disposition.

## II.  Legal Standards

### A. Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C 2011)(citations omitted). Summary judgment is warranted "if the movant shows [by affidavit or other admissible evidence] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's affidavits will be accepted as true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)(internal quotation marks omitted).

An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). In reviewing a summary judgment motion in the FOIA context, the court must conduct a *de novo* review of the record, *see* 5 U.S.C. § 552(a)(4)(B); but may rely on agency declarations. *See SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Agency affidavits or declarations that are "relatively detailed and non-conclusory" are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation marks omitted).

### B. FOIA Exemptions

Congress enacted FOIA to "open up the workings of government to public scrutiny through the disclosure of government records." *Judicial Watch, Inc.,* 375 F. Supp. 3d at 97 (quoting *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (internal quotation marks and alterations omitted). Although the legislation is aimed toward "open[ness] . . . of government,"

*id.*; Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information," *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (internal quotation marks and citations omitted). As such, pursuant to FOIA's nine exemptions, an agency may withhold requested information. 5 U.S.C. § 552(b)(1)-(9). However, because FOIA established a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the exemptions. *See Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

The agency bears the burden of justifying any withholding. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007). "To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called 'Vaughn index,' sufficiently detailed affidavits or declarations, or both." *Hussain v. U.S. Dep't of Homeland Sec.*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009)(citations omitted). Although there is no set formula for a *Vaughn* index, the agency must "disclos[e] as much information as possible without thwarting the exemption's purpose." *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987). "Ultimately, an agency's justification for invoking a FOIA

6

exemption is sufficient if it appears logical or plausible."
*Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941
(D.C. Cir. 2013) (internal quotation marks omitted).

## III. Analysis

Commerce argues that it properly invoked Exemption 5 for
its withholdings for two reasons: (1) the redactions in the
documents are protected under the deliberative process
privilege; and (2) the documents in their entirety are protected
under the presidential communications privilege. Def.'s Mot.,
ECF No. 23 at 6-7. Both of these privileges fall under Exemption
5. *See Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir.
2008). As explained below, the Court finds that the redactions
in the documents are protected under the deliberative process
privilege. Accordingly, the Court need not address whether the
documents in their entirety are protected by the presidential
communications privilege.

### A. Exemption 5

As the Court of Appeals for the District of Columbia
Circuit ("D.C. Circuit") has explained,

> FOIA Exemption 5 exempts from public
> disclosure "inter-agency or intra-agency
> memorandums or letters which would not be
> available by law to a party other than an
> agency in litigation with the agency." 5
> U.S.C. § 552(b)(5). Exemption 5 incorporates
> the privileges that the Government may claim
> when litigating against a private party,
> including the governmental attorney-client

and attorney work product privileges, the
presidential communications privilege, the
state secrets privilege, and the deliberative
process privilege. *See Baker & Hostetler LLP
v. Department of Commerce,* 473 F.3d 312, 321
(D.C. Cir. 2006).

. . . . This "privilege rests on the obvious
realization that officials will not
communicate candidly among themselves if each
remark is a potential item of discovery and
front page news." *Department of the Interior
v. Klamath Water Users Protective Association,*
532 U.S. 1, 8-9, 121 S. Ct. 1060, 149 L. Ed.
2d 87 (2001). The privilege serves to preserve
the "open and frank discussion" necessary for
effective agency decisionmaking. *Id.* at 9, 121
S. Ct. 1060. The privilege protects "documents
reflecting advisory opinions, recommendations
and deliberations comprising part of a process
by which governmental decisions and policies
are formulated." *NLRB v. Sears, Roebuck & Co.,*
421 U.S. 132, 150, 95 S. Ct. 1504, 44 L. Ed.
2d 29 (1975) (internal quotation marks
omitted). As we have stated, officials "should
be judged by what they decided, not for
matters they considered before making up their
minds." *Russell v. Department of the Air
Force,* 682 F.2d 1045, 1048 (D.C. Cir. 1982)
(brackets omitted).

To qualify for the deliberative process
privilege, [the information] must be both pre-
decisional and deliberative. *See Coastal
States Gas Corp. v. Department of Energy,* 617
F.2d 854, 866 (D.C. Cir. 1980). "[The
information] is 'predecisional' if it
precedes, in temporal sequence, the 'decision'
to which it relates." *Senate of the
Commonwealth of Puerto Rico v. Department of
Justice,* 823 F.2d 574, 585 (D.C. Cir. 1987);
*see also Coastal States,* 617 F.2d at 866 (pre-
decisional documents are "generated *before*
the adoption of an agency policy"). And [the
information] is deliberative if it is "a part
of the agency give-and-take—of the
deliberative process—by which the decision

> itself is made." *Vaughn v. Rosen,* 523 F.2d
> 1136, 1144 (D.C. Cir. 1975); *see also Coastal
> States,* 617 F.2d at 866.

*Abtew v. U.S. Department of Homeland Sec.*, 808 F.3d 895, 898-99 (D.C. Cir. 2015). The deliberative process privilege is to be construed "as narrowly as consistent with efficient Government operation." *United States v. Philip Morris*, 218 F.R.D. 312, 315 (D.D.C. 2003)(quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 667 (D.C. Cir. 1981)). "[W]hen claiming the deliberative process privilege, the agency must, at the very least, explain in its *Vaughn* Indices and/or declarations, for each contested document withheld in part or in full, (1) what deliberative process is involved, (2) the role played by the documents [at] issue in the course of that process, and (3) the nature of the decisionmaking authority vested in the office or person issuing the disputed document[s], and the positions in the chain of command of the parties to the documents." *Ctr. for Biological Diversity ("CBD") v. U.S. Envtl. Prot. Agency*, 279 F. Supp. 3d 121, 147 (D.D.C. 2017)(internal quotation marks and citations omitted).

In 2016, Congress passed the FIA, which, relevant to this case, codified the "foreseeable harm" standard established by the Department of Justice in 2009 and used to defend an agency's decision to withhold information. *See* S. Rep. No. 114-4, at 3 & n.8 (2015) (citing Office of Att'y Gen., Memorandum for Heads

of Executive Departments and Agencies, Subject: Freedom of Information Act (Mar. 19, 2009) ); S. Rep. No. 114-4, at 7–8. Under the "foreseeable harm" standard, the Department of Justice would "defend an agency's denial of a FOIA request only if (1) the agency reasonably fores[aw] that disclosure would harm an interest protected by one of [FOIA's] statutory exemptions, or (2) disclosure was prohibited by law." U.S. Dep't of Justice, Guide to the Freedom of Information Act 25 (2009 ed.), https://www.justice.gov/archive/ oip/foia_guide09/procedural-requirements.pdf (internal quotation marks omitted).

Accordingly, as amended by the FIA, the statutory text now provides that: "An agency shall ... withhold information under this section only if ... (I) the agency reasonably foresees that disclosure would harm an interest protected by [a FOIA] exemption; or (II) disclosure is prohibited by law[.]" 5 U.S.C. § 552(a)(8)(A). Stated differently, "pursuant to the [FIA], an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption—protected interest" and if the law does not prohibit the disclosure. *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 72 (D.D.C. 2018) (citation omitted).

To satisfy the foreseeable harm standard, "an agency must identify specific harms to the relevant protected interests that

it can reasonably foresee would actually ensue from disclosure of the withheld materials and connect the harms in a meaningful way to the information withheld." *Ctr. for Investigative Reporting v. U.S. Customs and Border Prot.* 436 F. Supp. 3d 90, 105 (D.D.C. 2019) (cleaned up). "[G]eneric, across-the-board articulations of harm that largely repeat statements already found in the *Vaughn Index*," *id.* at 106 (internal quotation marks and citation omitted); and "boilerplate" or "nebulous articulations of harm are insufficient," *Judicial Watch, Inc. v. U.S. Dep't of Justice (Judicial Watch II)*, No. CV 17-0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 1999). Instead, the agency needs to provide "context or insight into the specific decision-making processes or deliberations at issue, and how they in particular would be harmed by disclosure." *Ctr. for Investigative Reporting*, 436 F.Supp.3d at 107 (quoting *Judicial Watch II,* 2019 WL 4644029, at *5). In satisfying this burden, "agencies may take a categorial approach and group together like records . . . but when using a categorical approach, an agency must provide more than nearly identical boilerplate statements and generic and nebulous articulations of harm." *Id.* at 106 (internal quotation marks and citations omitted).

## 1. Deliberative Process Privilege[4]

Commerce has submitted declarations of Mr. Graff to explain why the withheld information falls within the deliberative process privilege. In his first declaration, Mr. Graff states that

> NOAA withheld portions of emails discussing drafts of future scientific papers including the National Climate Assessment, substantive discussions of draft reports, deliberative discussions of the scientific interpretation of solar wind data, an opinion-based discussion of postures and/or impressions on a CATO Report and how to calculate global temperature data, deliberations on climate change misdirection and draft talking points, opinions-based deliberations on a ranking exercise and scientific news articles, deliberations and opinions for a draft Memorandum for the President, and similar pre-decisional, deliberative conversations that were shared in the open and frank exchange of ideas, drafts, and postures between agencies.

Graff Decl., ECF No. 14-2 at 3 ¶ 12. Mr. Graff states that "the information was predecisional because NOAA was still considering its position on certain environmental reports, a draft climate and annual report, draft talking points, ranking exercises, discussions and opinions for a draft Memorandum intended for the President of the United States, and substantive responses and

---

[4] The Court did not address whether the withholdings fall within the scope of the deliberative process privilege in its prior Opinion in this case. Accordingly, the Court considers the declarations and *Vaugh* indices attached to Commerce's initial summary judgment briefing as well as Judicial Watch's opposition.

scientific interpretations of environmental data." *Id*. at 3-4 ¶ 13. Mr. Graff states that

> the information was deliberative because it reflects the internal comments, discussions, and recommendations of various members of NOAA's staff, The National Environmental Satellite, Data, and Information Service (NESDIS), and/or White House Office of Science and Technology Policy (OSTP) regarding the interpretation of scientific data, responses to environmental reports, and drafting reports and scientific papers.

*Id*. at 4 ¶ 14.  The second *Vaughn* index describes the predecisional and deliberative nature of each piece of withheld information. *See* Second *Vaughn* Index, ECF No. 17-3 at 1-30.

The Court has carefully reviewed Mr. Graff's declaration and the second *Vaughn* index. Mr. Graff's explanation and the information in the second *Vaughn* index are sufficient to demonstrate that the withheld information qualifies for the deliberative process privilege. Specifically, for each piece of information withheld under this privilege, Commerce has explained in detail the predecisional and deliberative nature of the withheld information. *See Abtew*, 808 F.3d at 898-99. Mr. Graff's declaration and the second *Vaughn* index taken together describe the deliberative process involved and the role played by the withheld information. *See CBD,* 279 F. Supp. 3d at 147. Finally, Mr. Graff's declaration and the second *Vaughn* index taken together explain the "nature of the decisionmaking

authority" and the "chain of command" of the persons involved in the email chains. *Id.*

Judicial Watch's objections—that Mr. Graff's initial "declaration and [the initial] *Vaughn* Index do not adequately support its claims of deliberative process privilege" because "each of the withheld emails in question appears either: 1) deliberative but not likely to chill future government decision-making if released; 2) not genuinely deliberative, but just conducting government business; or 3) not deliberative of a government policy decision, but only about application of existing policy," Pl.'s Consol. Br. in Opp'n to Mot. for Summ. J. and in Supp. of Cross Mot. Summ. J., ECF No. 16-1 at 10; are unpersuasive in light of the detailed information provided in the second and third *Vaughn* indices and Mr. Graff's initial and third declarations. Accordingly, the Court in its discretion declines to conduct an *in camera* review of the withheld material. *Mobley v. Cent. Intelligence Agency*, 806 F.3d 568, 588 (D.C. Cir. 2015).

## 2. Foreseeable Harm

Commerce has submitted the Third Declaration of Mr. Graff to explain why, in Commerce's opinion, release of the information being withheld under Exemption 5 would cause reasonably foreseeable harm to the interests protected by that

Exemption. Commerce divides the withheld information into four primary categories:

  i. a draft analysis of the lab work conducted by NOAA's Environmental Science Research Lab, or other NOAA scientists,

  ii. discussions with OSTP about the different scientific interpretation and impacts of environmental data sets,

  iii. discussions with OSTP regarding a draft Memorandum analyzing either a Cato Institute memorandum or a Wall Street Journal article, and

  iv. communications between NOAA and OSTP deliberating the content and presentation of press releases and talking points.

Third Graff Decl., ECF No. 23-2 at 3-4 ¶ 12.

Mr. Graff states that disclosure of the information being withheld in the first three categories would pose the same foreseeable harm. Mr. Graff states that agency scientists "have expressed increasing fear and trepidation in deliberating the merits, methodologies, conclusions, and peer review of their data sets, indicating they feel 'under siege' for the work they perform." *Id*. at 4 ¶ 13. He further states that, due to the risk of disclosure, agency scientists "cannot engage in meaningful scientific debate and collaboration in order to make quality agency decisions with respect to environmental science and data regarding climate change as their internal discussions and debate are at risk of public criticism and critique." *Id*. at 4 ¶

14. Mr. Graff states that agency scientists "do not want to appear to contradict each other, challenge their colleagues' conclusions, or take a position opposing other government scientists or agencies" because they "fear . . . their debate being misconstrued, and having their position publicly aired as discordant with other scientific conclusions by agency personnel or the scientific community." *Id*. Noting that one "scientist left the agency in part due to the contentious public scrutiny of his scientific deliberations," Mr. Graff states that the "fear of public criticism for personal scientific viewpoints directly impedes NOAA's ability to make informed, well-debated agency decisions regarding environmental data sets." *Id*. at 4 ¶ 15.

Mr. Graff's explanation is sufficient to satisfy the foreseeable harm standard. The explanation does not repeat the justifications for withholding the information provided in the third *Vaughn* index, but rather describes the specific harms to the deliberative process that would result from disclosure of the information. *See Ctr. for Investigative Reporting*, 436 F. Supp. 3d at 107. Commerce has taken a categorical approach, but the harms Commerce has articulated are far from "generic and nebulous." Furthermore, these harms are connected in a meaningful way to the information being withheld because of the predecisional and deliberative nature of the information.

16

With regard to the fourth category of withheld material,
Mr. Graff states that disclosure "would impede the agency's
ability to internally discuss postures, proposed responses, and
to debate relative merits of different possible agency positions
before making official agency statements to the press." Third
Graff Decl., ECF No. 23-2 at 5 ¶ 16. Furthermore, "if draft
press talking points are released, and the draft differs from
what was actually released to the press, it would cause
significant public confusion—incorrectly implicating an agency
change of posture, improperly suggesting deceit or concealment
if draft topics are ultimately not discussed with the press, or
incorrectly implying disagreement on agency positions while the
wording, posture, and topics are still being formed." *Id.*
Finally, "if disclosed, those who debate the press statements
and talking points will not be candid in their reviews,
diminishing the quality and vigor of inter- and intra-agency
discussions before agency statements are made to the press." *Id.*
at 5 ¶ 17.

Mr. Graff's explanation for this category is also
sufficient to satisfy the foreseeable harm standard. As with the
first three categories of withheld information, the explanation
does not repeat the justifications for withholding the
information provided in the *Vaughn* index, but rather describes
the specific harms to the deliberative process that would result

from disclosure of the information. *See Ctr. for Investigative
Reporting*, 436 F. Supp. 3d at 107. And again, while Commerce has
taken a categorical approach, the harms Commerce has articulated
are far from "generic and nebulous." Furthermore, these harms
are connected in a meaningful way to the information being
withheld because of the predecisional and deliberative nature of
the information.

Judicial Watch acknowledges that the deliberative process
privilege protects: (1) "preserving frank discussions between
subordinates and superiors"; and (2) "preventing public
confusion"; but argues that Commerce has not met its burden of
showing foreseeable harm to those protected interests because
Commerce's "real reason" for withholding the information is fear
of "agency embarrassment" and "painting the agency in a negative
light" which "Congress has eliminated as lawful grounds for
withholding under FIA." Pl.'s Consol. Br. in Opp'n to Def.'s
Renewed Mot. for Summ. J. and in Supp. of Pl.'s Second Cross-
Mot. for Summ. J. ("Pl.'s Opp'n and Cross Mot."), ECF No. 24 at
8 (citing 162 CONG. REC. H3714, 114th Cong. 2nd Sess., Vol. 162
No. 93, Statement of Congressman Meadows (June 13, 2016) (noting
that pursuant to the FIA, "agencies may no longer withhold
information that is embarrassing or could possibly paint the
agency in a negative light simply because an exemption may
technically apply. This will go a long way toward getting rid of

the withhold-it-because-you-want-to exemption.").[5] Judicial Watch also argues that there is no foreseeable harm of confusion to the public because "[e]veryone already knows that scientists can and do occasionally disagree." *Id.* at 9. Finally, Judicial Watch disputes that the "public confusion" interest justifies withholding the fourth category of information apparently because the fact that government scientists occasionally disagree with each other is not ground for invoking the "public confusion" interest. *Id.* at 12-14.

The Court finds Judicial Watch's arguments unpersuasive. Commerce has met its burden of articulating the foreseeable harm disclosure of the information would have on the ability of agency scientists to "engage in meaningful scientific debate and collaboration" to arrive at "quality agency decisions." Third Graff Decl., ECF No. 23-2 at 4 ¶ 14. This is entirely distinguishable from withholding information that could embarrass an agency or paint it in a negative light. Similarly, Judicial Watch's argument regarding the fourth category of withheld materials is non responsive to Commerce's argument.

---

[5] The Court rejects Judicial Watch's contention that Mr. Graff's declaration "describes a culture of fear and secrecy within NOAA," Pl.'s Opp'n and Cross Mot."), ECF No. 24 at 9-11; and its argument based on that assertion as Judicial Watch has clearly mischaracterized Mr. Graff's third declaration.

### B. Segregability

Under FOIA, "even if [the] agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s)." *Roth v. U.S. Dept. of Justice*, 642 F. 3d 1161, 1167 (D.C. Cir. 2001) (internal quotation marks and citation omitted). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F. 2d 242, 260 (D.C. Cir. 1977)). Thus, an agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks and citation omitted).

However, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" from the requester. *Sussman v. U.S. Marshals Serv.*, 494 F. 3d 1106, 1117 (D.C. Cir. 2007). Commerce represents that it has "carefully reviewed each responsive record on a page-by-page and line-by-line basis in an attempt to identify reasonable segregable, non-exempt information" and has determined that

there no more reasonably segregable information and that all segregable information has been produced. Def.'s Mot, ECF No. 23 at 10; Third Graff Decl., ECF No. 23-2 at 6 ¶¶ 20-23. Judicial Watch, citing persuasive authority outside of this circuit, asserts that Commerce's "declaration offers only boilerplate language about a segregability review." Pl.'s Consol. Br. in Opp'n to Mot. for Summ. J. and in Supp. of Cross Mot. Summ. J., ECF No. 16-1 at 21.

Defendants have submitted thoroughly detailed declarations, in combination with supporting documentation, which support and satisfy FOIA's segregability requirement. *See, e.g., Johnson*, 310 F. 3d at 776; *Loving v. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008). Contrary to Judicial Watch's assertion of boilerplate language, Commerce has met its segregability burden by submitting attestations of its declarant that the records were reviewed "on a page by page and line by line basis in an attempt to identify reasonably segregable, non-exempt information." Third Graff Decl., ECF No. 23-2 at 6 ¶ 20; *see also Taylor Energy Co., LLC v. U.S. Dep't of Interior*, 271 F. Supp. 3d 73, 97 (D.D.C. 2017). Furthermore, Judicial Watch has provided no basis to question the good-faith presumption afforded to these representations. *See Johnson*, 310 F. 3d at 776. Accordingly, the Court concludes that Commerce has satisfied its segregability obligations under FOIA.

## IV.  Conclusion

For the reasons stated, Commerce's Renewed Motion for Summary Judgment is **GRANTED,** the portion of Judicial Watch's initial Motion for Summary Judgment that was held in abeyance is **DENIED,** and Judicial Watch's Second Motion for Summary Judgment is **DENIED.** An appropriate order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**            United States District Judge**
**             November 25, 2020**